# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                      No. CR 03-2451 JB

ERNESTO HOLGUIN HERNANDEZ,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (I) the Defendant's Objections to Presentence Report, Memorandum of Law, and Incorporated Motion for a More Reasonable Sentence, filed September 8, 2005 (Doc. 12); and (ii) the Supplemental Memorandum of Law Regarding Sentencing, filed March 28, 2008 (Doc. 16).  The Court held a hearing on April 2, 2008.  The primary issues are: (I) whether the plea agreement permits Defendant Ernesto Holguin Hernandez to argue for a departure and variance from the advisory Guideline sentence; (ii) whether the Pre-Sentence Investigative Report ("PSR"), disclosed August 9, 2004, correctly enhances the offense level for a "vulnerable victim," even though the offense is for misprision of a felony and not the assault itself; (iii) whether the Court should depart downward by 5 levels from the Guideline sentence because Hernandez' conduct constitutes aberrant behavior; (iv) whether the Court should vary downward 7 levels from the Guideline sentence for Hernandez' substantial assistance to authorities; and (v) whether the Court should vary from the advisory Guideline range.  The Court will overrule the objections, deny the request for a downward departure for aberrant behavior, grant the motion for a downward departure for substantial assistance, and deny the request for a variance.

## FACTUAL BACKGROUND

Hernandez is a twenty-eight year old man, see PSR ¶ 50, at 12, with no prior criminal history, see id. ¶ 47, at 11.  Hernandez has been cited on at least four occasions for various traffic violations, including No Registration or Renewal of Registration, Careless Driving, No Driver's License, and Speeding.  See id. ¶ 48, at 12.  He supports his family, see  id. ¶ 49, at 12, and has an honorable work record.  See id. ¶¶ 60-64 at, 14-15.

In the federal offense at issue, Hernandez initially obstructed the investigation of a serious assault on an inmate, Tampico Verdin-Rendon, by a group of corrections officers.  See id. ¶¶ 12-15, at 5.  Before writing his incident report, Hernandez, along with other officers present on the day of the assault, discussed what had happened to Verdin and agreed to write that the assault had occurred because Verdin swung at Hernandez, even though they all knew that Verdin had not done so.  See id. ¶ 15, at 5. The victim received serious bodily injury through the detention officers' aggravated assault.  See id. ¶ 14, at 5.  That assault resulted in injuries to the victim that  required extensive medical intervention.  See id. ¶¶ 14 at 5, 30-31 at 5, 8-9.

Hernandez failed to truthfully report the assault of the inmate in a timely manner.  See id. ¶ 15, at 5-6. Hernandez took several steps, over a period of time, to conceal his knowledge of the wrongful and brutal assault of Verdin-Rendon by his fellow officers, beginning with a meeting with other witness officers to formulate a false account of the incident, which was then translated into official incident reports.  See id.  Subsequent to this duplicitous behavior, Hernandez voluntarily spoke to the FBI and repeated his false account of the incident.  See id.  Only after Hernandez was confronted by the confession of one of his fellow officers did he tell the truth.  See id.

## PROCEDURAL BACKGROUND

Hernandez pled guilty to one count of Misprision of a Felony, 18 U.S.C. § 4, the charges for which were set forth in an Information.  See Plea Agreement at 2, filed December 9, 2003 (Doc. 4)("Plea Agreement").  He now stands before the Court for sentencing.

The PSR states: "U.S.S.G. § 2A2.2, Aggravated Assault provides a base offense level of 15. As the underlying offense involved serious bodily injury, a four level increase would apply pursuant to §2A2.2(b)(3)(c).  As a result, the base offense level for 2H1.1(a)(1) would be 15 plus 4 which equals 19."  PSR ¶ 37, at 10 (emphasis in original).  The PSR states, however, that Hernandez' total offense level is 15, which provides for a sentencing range of 18-24 months.  See id. ¶ 71, at 18.

The United States has not submitted any objections to the PSR.  On September 8, 2005, Hernandez, through his attorney, submitted to the United States Probation Office ("USPO") his Objections to the Presentence Report, Memorandum of Law, and Incorporated Motion for a More Reasonable Sentence.  See Defendant's Objections to the Presentence Report, Memorandum of Law, and Incorporated Motion for a More Reasonable Sentence, filed September 8, 2005 (Doc. 12)("Objections").  In that document, Hernandez submits objections to the PSR and makes a motion for what he argues is a more reasonable sentence than the term that the sentencing Guidelines recommend.  See id. at 1-5.

Specifically, Hernandez objects to paragraph 1 of the PSR and any other section of the PSR which suggests that he is prohibited from raising any basis for a more reasonable sentence.  See Objections at 1.  Hernandez objects to paragraph 39 of the PSR, which creates a  two-level enhancement  for a vulnerable victim.  See id. at 1.  Hernandez also objects to paragraphs 42 and 44 and any "other paragraph that suggests the Defendant's Adjusted Offense Level should be anything but 16."  Objections at 2.  Additionally, Hernandez objects to paragraph 71, which suggests

-3-

his sentence should be something other than 12 to 18 months, based on a total offense level of 13 and criminal history category of I.  See Objections at 2.  Finally, Hernandez objects to paragraph 86, which indicates that no information has been identified that would warrant a departure from the Guidelines.  See id.  Hernandez argues that he should receive a 5-level downward departure for aberrant conduct and requests the Court to impose a sentence of 0 to 6 months incarceration.  See id. at 5.  Hernandez supplemented his Objections on March 28, 2008 by filing a Supplemental Memorandum of Law Regarding Sentencing.  See Supplemental Memorandum of Law Regarding Sentencing, filed March 28, 2008 (Doc. 16).

On September 23, 2005, the USPO disclosed an addendum to the PSR.  See PSR, Addendum, disclosed on September 23, 2005 ("Addendum").  In the Addendum, the USPO addressed Hernandez' objections.  See id. at 1-2.

On March 31, 2008, the United States filed a Sentencing Memorandum to assist the Court in sentencing Hernandez based on his guilty plea. See Sentencing Memorandum, filed March 31, 2008 (Doc. 18)("Sentencing Memo.").  In its Sentencing Memorandum, the United States argued that the Guidelines set forth a reasonable sentence  for the conduct at issue in Hernandez' case and that there was no basis for a downward departure based on aberrant conduct.  See id. at 4-6.

At the hearing on April 2, 2008, the Court stated that Hernandez' first objection to the fact that the PSR indicated that Hernandez could not raise a request for a departure or variance from the Guideline sentence was appropriately corrected by the Addendum and thus was overruled as moot. See Transcript of Hearing at 2:20-3:2 (taken April 2, 2008)("Tr.")(Court).[1]  In response to the Court's ruling, Hernandez' counsel stated that such a ruling was acceptable. See id. at 3:3-4 (Pierce-

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Varela).  The Court also stated at the hearing that it believed that the USPO had correctly determined the vulnerable-victim enhancement.  See id. at 3:5-14 (Court).  In response to the Court's thoughts on the vulnerable-victim enhancement, Hernandez' counsel stated: "As much as I hate to say this[,] I agree with probation and [Hernandez] will withdraw that [objection] at this time." Id. at 3:16-17 (Pierce-Varela).  Thus, the Court acknowledged the vulnerable victim objection as withdrawn.  See id. at 3:18-19 (Court).

Additionally, at the hearing, the United States moved the Court, pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), for a downward departure for substantial assistance to authorities. See Tr. at 11:13-13:12 (Court & Parker).  In its response to the Court's inquiry, the United States stated that  it believed that a downward departure of 7 offense levels from an offense level of 15 to an offense level of 8 was appropriate and that it left the amount of departure to the Court's discretion. See id. at 14:12-21 (Parker).  An offense level of 8 and a Criminal History Category of I results in a Guideline imprisonment range of 0 to 6 months.

### LAW REGARDING SENTENCING GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States severed the mandatory provisions from the Federal Sentencing Act, thus making the Guidelines effectively advisory.  While excising two sections, the Supreme Court left the remainder of the Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  543 U.S. at 261.

### 1.      Factors that the Court Must Consider to Determine Appropriate Sentences.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A)-(D). See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case."). To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims. See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to be considered. See Rita v. United States, 127 S. Ct. 2456, 2464 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"). They are significant because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the

proper sentence for federal offenses." United States v. Cage, 451 F.3d at 593 (internal quotations omitted). A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006). This presumption, however, is an appellate presumption, and not one that the trial court can or should apply. See Gall v. United States, 128 S.Ct. 586, 591 (2007); Kimbrough v. United States, 128 S.Ct. 558, 564 (2007); Rita v. United States, 127 S. Ct. at 2463. Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory Guideline sentence. See Gall v. United States, 128 S.Ct. at 591; Kimbrough v. United States, 128 S.Ct. at 564; Rita v. United States, 127 S. Ct. at 2463.

**2.      Post-Booker Application of the Sentencing Guidelines and the Procedure for Determining a Reasonable Sentence.**

In United States v. Booker, the Supreme Court considered whether the mandatory sentencing regime set forth in the U.S.S.G. violated the Sixth Amendment right to a jury trial, as the Supreme Court had construed that right in Blakely v. Washington, 124 S.Ct. 2531 (2004). After answering the question in the affirmative, see United States v. Booker, 543 U.S. at 245, the Supreme Court severed the provisions that made the Guidelines mandatory and held that the remaining Guidelines would continue to operate, in an advisory fashion, in accordance with the Sixth Amendment's requirements. See id.

In the first of two majority opinions, the Supreme Court in United States v. Booker reaffirmed its holding in Blakely v. Washington that a defendant has the right to have the jury find

the existence of any fact that the law makes "essential to his punishment." Blakely v. Washington, 543 U.S. at 231.  Because the mandatory-Guidelines scheme required judges to enhance sentences on the basis of findings that the court made, the judge's findings were "essential" to the higher punishment, and the fact that those findings were made by a judge and not by jury rendered the mandatory regime unconstitutional under the Sixth Amendment.  United States v. Booker, 543 U.S. at 248-49.

In the second majority opinion in United States v. Booker, the Supreme Court addressed the remedy for this Sixth-Amendment violation.  The Supreme Court invalidated 18 U.S.C. §§ 3553(b)(1) and 3742(e), the provisions of the Sentencing Reform Act that made the federal Guidelines mandatory, and held that the Sentencing Reform Act, so modified, made the Guidelines "effectively advisory."  United States v. Booker, at 543 U.S. at 245.  Although the opinion rendered the Guidelines advisory rather than mandatory, the Supreme Court nevertheless noted that a district court retains an obligation to consult and consider those Guidelines when determining a reasonable sentence for a defendant: "[T]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." 543 U.S. at 264.

To consult and consider the Guidelines, the sentencing court must continue to determine the appropriate Guideline sentence.  Because the Guidelines remain in effect, albeit in an advisory capacity, the method of calculation of a sentence remains unchanged by Blakely v. Washington and by United States v. Booker. Once the court has determined the appropriate Guideline range, the court must then "consult" those Guidelines and "take them into account" when determining a reasonable sentence.  Id. at 264.

## LAW REGARDING MISPRISION OF FELONY

In calculating the base-offense level for the conduct that constitutes misprision, the

Guidelines cross-reference to the calculations for the underlying offense, thereby ensuring that the offense level for failure to report a known federal crime reflects the seriousness of that underlying offense. U.S.S.G. § 2X4.1 provides the Guideline sentence for Misprision of Felony, which is codified at 18 U.S.C. § 4. U.S.S.G. § 2X4.1 provides: "(a) Base Offense Level: 9 levels lower than the offense level for the underlying offense, but in no event less than 4, or more than 19." U.S.S.G. § 2X4.1. Application Note 1 states:

> "Underlying offense" means the offense as to which the defendant is convicted of committing the misprision. Apply the base offense level plus any applicable specific offense characteristics that were known, or reasonably should have been known, by the defendant; see Application Note 10 of the Commentary to § 1B1.3 (Relevant Conduct).

U.S.S.G. § 2X4.1 cmt. app. n.1. Application Note 10 of the Commentary to U.S.S.G. § 1B1.3 (Relevant Conduct) provides: "In the case of solicitation, misprision, or accessory after the fact, the conduct for which the defendant is accountable includes all conduct relevant to determining the offense level for the underlying offense that was known, or reasonably should have been known, by the defendant." U.S.S.G. § 1B1.3 cmt. app. n.10.

U.S.S.G. § 3A1.1 states that, "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase by 2 levels." U.S.S.G. § 3A1.1. Application note 2 of U.S.S.G. § 3A1.1 defines vulnerable victim as "a person (A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under 1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1, cmt. app. n.2. Furthermore, Application note 2 states that the vulnerable victim increase

> applies to offenses involving an unusually vulnerable victim in which the defendant knows or should have known of the victim's unusual vulnerability. The adjustment would apply, for example, in a fraud case in which the defendant marketed an

ineffective cancer cure or in a robbery in which the defendant selected a handicapped victim. But it would not apply in a case in which the defendant sold fraudulent securities by mail to the general public and one of the victims happened to be senile. Similarly, for example, a bank teller is not an unusually vulnerable victim solely by virtue of the teller's position in a bank.

U.S.S.G. § 3A1.1, cmt. app. n.2.

## LAW REGARDING DEPARTURES FOR ABERRANT BEHAVIOR

The Guidelines "place essentially no limit on the number of potential factors that may warrant a departure." Koon v. United States, 518 U.S. 81, 106 (1996). See United States v. Coleman, 188 F.3d 354, 358 (6th Cir. 1999)(en banc)(stating that there are a "potentially infinite number of factors which may warrant a departure"); 18 U.S.C. § 3661 (stating that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). A departure is warranted if the case is "unusual enough for it to fall outside the heartland of cases in the Guideline." Koon v. United States, 518 U.S. at 92.

It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. We do not understand it to have been the congressional purpose to withdraw all sentencing discretion from the United States district judge.

Koon v. United States, 518 U.S. at 113.

U.S.S.G. § 5K2.20 (effective November 1, 2000) authorizes a departure for aberrant conduct. See U.S.S.G. § 5K2.20. Pursuant to U.S.S.G. § 5K2.20, Aberrant Behavior, section (b) indicates the requirements are as follows: "The court may depart downward under this policy statement only if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life." U.S.S.G. § 5K2.20(b). Pursuant to

section (c) Prohibitions Based on the Presence of Certain Circumstances, "[t]he court may not depart downward pursuant to this policy statement if any of the following circumstances are present: [(i)] The offense involved serious bodily injury or death." U.S.S.G. § 5K2.20(c).

In United States v. Pena, 930 F.2d 1486 (10th Cir. 1991), the Tenth Circuit upheld a departure for aberrant behavior. See id. at 1495-96. The Tenth Circuit concluded that the trial court could exercise its discretion to depart downward in a case where there was no evidence that the defendant had been a regular participant in the ongoing criminal enterprise or had ever been convicted of any unrelated illegal acts. See id.  See also United States v. Patillo, 817 F.Supp. 839, 845 (C.D. Cal. 1993)(stating that a departure was warranted where first-time offense, possession of 586 grams of crack, was "out of character" for the defendant, who had stable employment history; who, in a moment of "financial weakness" and "unusual temptation," committed the crime; and who demonstrated "tremendous remorse"); United States v. Baker, 804 F.Supp. 19, 21 (N.D. Cal 1992)(explaining that, where the defendant pled guilty to possession of one kilogram of crack and where act was "single act of aberrant behavior," downward departure proper).  "The totality of the circumstances must be viewed to see whether the offense fits within [the defendant's] normal conduct or if it is a complete shock and out of character."  United States v. Tsosie, 14 F.3d 1438, 1441 (10th Cir. 1994), overruled in part by United States v. Benally, 215 F.3d 1068, 1074 (10th Cir. 2000).

In United States v. Tsosie, the Tenth Circuit discussed aberrant behavior as a ground for departure in a homicide case in which the district court departed downward to a level 9, relying partly on evidence of aberrational behavior and citing United States v. Pena.  See United States v. Tsosie, 14 F.3d at 1441-42.  The Tenth Circuit remanded the case to the district court, because the court had not adequately set out a factual basis for departure, explaining that the Tenth Circuit would

not "rationalize" the district court's ruling and that, along with the great discretion the district court has in sentencing, it also has the responsibility to support its departure by facts in the record:

> We will not rationalize a district court's departure from the Guidelines -- either the decision to depart or the degree of departure.  [United States v. ]Jackson, 921 F.2d [985,] 990 [(10th Cir. 1990)].  "It is not our task to determine what a district court's explanation for a departure could be."  Id. at 993.  Once the court assumes the burden of the step of departure it must also bear the corresponding burden of ensuring the record contains sufficient information to determine how and why the sentencing court reached the degree of departure imposed.  U[nited] S[tates] v. St. Julian, 922 F.2d 563 (10th Cir.1990)(Julian I).

United States v. Tsosie, 14 F.3d at 1441, 1443 (footnote omitted).  In United States v. Benally, the Tenth Circuit receded from its holdings in United States v. Tsosie and United States v. Pena to the extent that, in those cases, the Tenth Circuit "upheld downward departures for aberrant conduct based, in part, on the fact the defendant had not been engaged in any prior criminal activity." United States v. Benally, 215 F.3d at 1074.  The Tenth Circuit then held

> that the factors supporting an aberrant behavior departure must involve something other than an act which is merely a first offense.  Stated differently, the permissible factors in this context must illustrate some unique circumstance -- some element of abnormal or exceptional behavior -- beside the fact the defendant has never before committed the crime.

Id.  Moreover, the Guidelines indicate that, even in the most difficult and justifiably sympathy-evoking area, courts should depart downward only in rare cases.  See United States v. Archuleta, 128 F.3d 1446, 1450 (10th Cir. 1997).

In United States v. Jones, the Tenth Circuit reviewed a district court's downward departure on the bases of eleven factors, including collateral employment consequences, aberrant nature of the offense conduct, community service, support in the community, voluntary disclosure of offense conduct, post-offense rehabilitation, and access to rehabilitative counseling at defendant's place of employment.  See 158 F.3d at 496 n.4.  In upholding the district court's decision to depart

downwards, the Tenth Circuit gave great deference to the district court's factual findings, saying:

> In reviewing the district court's characterization of Mr. Jones' offense conduct as aberrant behavior under the abuse of discretion standard we must determine how much deference is due.  The Supreme Court has indicated deference is owed to the "judicial actor better positioned than another to decide the issue in question."  Koon [v. United States], 518 U.S. at 99 . . . (quotation marks, omission, and citations omitted).  The Supreme Court has further indicated the district court has a "special competence" in making the fact-specific assessments necessary to determine whether a particular case is sufficiently unusual to warrant departure.  Id.  In such instances, deferential appellate review facilitates the district court's resolution of questions involving "multifarious, fleeting, special, narrow facts that utterly resist generalization."  Id. (quotation marks and citation omitted).
>
> We are convinced the determination of whether an individual defendant's offense conduct is aberrational, like the decision to depart, requires consideration of unique factors not readily susceptible of useful generalization.  The district court is in the better position to determine whether the defendant's offense conduct is out of character for that individual.  Accordingly, the district court's resolution of this largely factual question is due substantial deference.  After reviewing the record here, we conclude the district court did not abuse its discretion when it found Mr. Jones' offense conduct to be aberrational in light of his personal history.
>
> * * * *
>
> In view of the district court's special competence in making the refined comparative factual assessments necessary to determine if a circumstance is unusual or a characteristic is present to an exceptional degree, see Koon [v. United States], 518 U.S. at 98-99 . . . , we are not inclined to substitute our judgment for that of the sentencing court.  The district court did not abuse its discretion when it found the circumstances of this case atypical.  The permissible departure factors available to the district court, in the aggregate, provided a proper basis for departure, and are supported adequately in the record.

United States v. Jones, 158 F.3d at 500, 505.

This Court has previously held that a single criminal incident that deviates  from an otherwise law-abiding life is an insufficient basis, in itself, to grant a departure for aberrant behavior. See United States v. Montoya, No. CR05-469 JB, Memorandum Opinion and Order at 8, filed April 18, 2007 (Doc. 367)(D.N.M.)(Browning, J.)(denying the defendant's request for a departure based on aberrant behavior, stating that the defendant's conviction for  a single drug

transaction was not so extraordinary as to fall outside the heartland of drug cases because "many people who are otherwise law abiding get involved with the wrong people and with drugs"); United States v. Guerrero-Marquez, No. CR07-1050 JB, Memorandum Opinion and Order at 15, filed on December 13, 2007 (Doc. 33)(D.N.M.)(Browning, J.)(explaining that, even if a departure for aberrant behavior was available to the defendant, the Court would deny such a request because there is nothing particularly unusual about the defendant being apprehended for a drug transaction that was his first offense). Additionally, this Court has determined that there is not necessarily a basis for finding aberrant behavior under U.S.S.G. § 5K2.20 where several repetitive or planned acts are the underlying conduct of a single charge against a defendant. See United States v. Myers, No. CR03-1943 JB, Memorandum Opinion and Order at 6-7, filed on March 5, 2004 (Doc. 21)(D.N.M.)(Browning, J.)(finding that the defendant's fraud scheme did not constitute aberrant behavior because it involved more than a single criminal occurrence, was not limited in duration, and involved significant planning); United States v. Palma, No. 03-CR-1890 JB, Memorandum Opinion and Order at 23, filed on March 18, 2005, (Doc. 303)(D.N.M.)(Browning, J.)(finding that the defendant's conduct did not support a departure for aberrant behavior because her criminal endeavors spanned several months and she "was not a mindless participant in the crimes, acting without any thought or planning.").

## ANALYSIS

Because the USPO properly included in the Addendum to the PSR that Hernandez was able to raise a request for a departure or a variance, the Court will overrule Hernandez' objection to paragraph 1 as moot. Because Hernandez chose to withdraw his objection relating to the vulnerable-victim enhancement at the April 2, 2008 hearing, the Court will not rule on that objection and consider it withdrawn. And because the Court believes that Hernandez' background and

characteristics fall within the heartland of cases that the federal courts see, the Court will deny his request for a departure on the basis of aberrant behavior.  On the other hand, the Court will grant the United States' request for a downward departure for substantial assistance to authorities.  The Court will also deny Hernandez' request for a variance.

## I.      THE COURT WILL OVERRULE HERNANDEZ' OBJECTION TO PARAGRAPH 1 OF THE PSR AS MOOT.

Paragraph 1, page 3, of the PSR states, in relevant part: "The defendant's plea agreement reflects [that] the defendant recognizes the agreement has conferred a benefit upon him and no downward departure from the applicable Guideline sentencing range is appropriate.  Consequently, the defendant will not seek a downward departure." PSR ¶ 1, at 3.  Hernandez objects to paragraph 1, page 3 of the PSR, and any other section of the PSR, to the extent that the PSR suggests he is prohibited from raising any basis for a more reasonable sentence and/or that no basis exists for a more reasonable sentence.  See Objections at 1.  In its Addendum, disclosed September 23, 2005, the USPO states that, upon further review of the PSR and of Hernandez' plea agreement, it too has determined that the plea agreement does not reflect that a downward departure from the applicable Guideline sentencing range is inappropriate.  See Addendum at 1.

The Addendum states that Hernandez is eligible to raise a basis for a more reasonable sentence, and that the PSR is thereby amended to reflect his ability to argue for a sentence different from the Guideline sentence. See id.  Accordingly, the Court will overrule Hernandez' objection to paragraph 1 of the PSR as moot.

## II.     THE USPO PROPERLY APPLIED THE ADJUSTMENT FOR VULNERABLE VICTIM.

Hernandez objects to paragraph 39 on page 10 of the PSR, which calculates a 2-level enhancement for a "vulnerable victim."  Hernandez also objects to paragraphs 42 and 44 on page

11 of the PSR, and any other paragraph, which suggests that his Adjusted Offense Level should be anything but 16 and his Total Offense Level anything but 13. Finally, Hernandez objects to paragraph 71 on page 18 of the PSR, and any other paragraph, that suggests his Guideline range should be anything but 12 to 18 months, based on a total offense level of 13 and a criminal history category of I. See Objections at 2. At the April 2, 2008 hearing, however, Hernandez' attorney agreed that the 2-level vulnerable-victim enhancement was properly applied and withdrew his objection. See Tr. at 3:5-17 (Court & Pierce-Varela).

The Court is sentencing Hernandez based on the offense of Misprision of a Felony, not the underlying offense that a co-defendant instigated. Pursuant to U.S.S.G. § 1B1.3, Application Note 10, "[i]n the case of solicitation, misprision, or accessory after the fact, the conduct for which the defendant is accountable includes all conduct relevant to determining the offense level for the underlying offense that was known, or reasonably should have been known, by the defendant." U.S.S.G. § 1B1.3, cmt. app. n.10. The Application Notes to U.S.S.G. § 2X4.1 and to the Commentary of U.S.S.G. § 1B1.3 make clear that the Court must, to calculate an accurate offense level for misprision of felony, apply "any applicable specific offense characteristics" and that the conduct for which Hernandez is accountable includes all conduct relevant to determining the offense level for the underlying offense. U.S.S.G. § 2X4.1. Thus, unless specifically excluded under the Guideline application, specific offense characteristics and adjustments are to be applied independently.

Accordingly, the USPO correctly applied and added a 2-level upward, victim-related adjustment to Hernandez' offense level. Although not a part of Hernandez' plea agreement, the information in the PSR supports the enhancement, and Hernandez does not dispute any of the facts. As the PSR notes, pursuant to U.S.S.G. § 3A1.1(b)(1), Hate Crime Motivation or Vulnerable Victim,

-16-

if the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase by 2 levels.  See   U.S.S.G. § 3A1.1(b)(1).

The USPO points out that the investigation has revealed that the victim was confined to a cell with four guards initially present; however, throughout the duration of the assault, the number of officers increased to seven guards being inside the cell.  See PSR ¶ 39, at 10.  Based on grand jury testimony, the victim posed no threat to the defendant and fellow guards.  See id.  The victim could not defend himself against an assault and could not flee from harm.  See id.

A 2-level increase is therefore warranted.  The Court believes that the USPO's offense-level computations were correctly applied and that Hernandez' Adjusted Offense Level should remain at 18.  The Court also believes that the offense-level computations were correctly applied in this case and that Hernandez' Total Offense Level should remain at 15.  A Total Offense Level of 15 combined with a criminal history category of I results in a Guideline imprisonment range of 18 to 24 months.  See id. ¶ 71, at 18.

## III.   THE COURT WILL DENY HERNANDEZ' REQUEST FOR A DEPARTURE FOR ABERRANT BEHAVIOR.

Finally, Hernandez objects to paragraph 86 on page 20 of the PSR, which indicates no information has been identified that would warrant a departure from the Guidelines.  See Objections at 2.  Hernandez outlines one primary ground for a more reasonable sentence: aberrant behavior. See id. at 4-5.  Hernandez contends that his offense represents a single and isolated act of aberrant behavior on his part.  See id.  Hernandez describes this offense in his case as a "classic" single act of aberrant behavior, and denies that there is any evidence that he was a regular participant in an ongoing criminal enterprise or has ever committed any unrelated illegal acts. Id. at 4-5. Hernandez contends that he is unsophisticated and untutored in criminal ways, and has not demonstrated any

criminal-thinking patterns.  See id. at 4.  Hernandez maintains that his honorable employment history, his conduct in his community, his desperate financial situation, and the fact that he has no prior criminal history support a departure in his case.  See id. at 5.

Nevertheless, the Court will deny Hernandez' request for a downward departure on the basis of aberrant behavior.  There is not a sound basis in this case for a downward departure based on "aberrant misconduct."  Specifically, the facts of this case do not meet the stringent requirements for a downward departure based on aberrant conduct.

First, there is an initial question whether the Guidelines authorize a departure for aberrant behavior.  As the USPO noted in the Addendum to the PSR, a departure is not available for aberrant behavior in a case where, as here, the offense involved serious bodily injury or death.  See Addendum at 2 (citing U.S.S.G. § 5K2.20(c)(1)).  This case involves serious bodily injury.  Thus, pursuant to U.S.S.G. §1B1.3, the defendant is not eligible for a downward departure pursuant to Aberrant Behavior.

Second, the Court considers Hernandez' conduct to be repetitious and planned, and does not believe that, under the facts and circumstances of his conduct,  his conduct supports such a departure.  See, e.g., United States v. Boyles, 310 F.3d 1302, 1314-15 (10th Cir. 2002)(stating that efforts to conceal criminal wrongdoing constitutes a "calculated response [that is] inconsistent with a finding of aberrant behavior").  First, Hernandez agreed with other officers to write in their reports that the takedown of Verdin occurred because Verdin swung at Hernandez, even though the officers knew Verdin had not swung at Hernandez.  See PSR ¶ 15, at 5.  Hernandez further omitted from his reports any mention of the unjustified conduct by other officers that he had witnessed.  See id. When initially interviewed by the FBI, Hernandez again reported a false story about the incident. See id. Upon being called in for further questioning, Hernandez admitted he had made false

-18-

statements and had omitted facts from his story for the purpose of concealing the fact that he had witnessed unjustified uses of force by fellow officers.  See id. at 6.

Third, Hernandez contends that he is entitled to a downward departure based on aberrant behavior because he has led an otherwise law-abiding life.  See Objections at 4-5.  That Hernandez had never been convicted of a federal crime before this incident is, standing on its own, of no extraordinary consequence.  The problem for Hernandez' request is that the Court is having trouble saying that Hernandez is significantly different from many other first offenders who appear before the Court for sentencing.

Unfortunately, the nation's federal prisons contain many prisoners who have committed one very serious crime.  It is particularly the case that many who plead guilty to misprision of felony are people who have little or no criminal history.  Often a defendant with minimal criminal history will plea bargain to a misprision of felony.

Moreover, a defendant's Criminal History Category reflects his or her lack of criminal history, thus the advisory Guideline sentence already reflects that, to a certain degree, Hernandez acted aberrantly in committing the crime. There is thus no reason to depart, because the advisory sentence for the crime charged, misprision of felony, and the Criminal History Category of I, already take into account the factors that are most prominent about Hernandez.

Furthermore, there is evidence in the PSR's section styled "Offense Behavior Not Part of Relevant Conduct" indicating that Hernandez was involved in a separate cell extraction and that, after the incident, he and others talked about the incident and wrote out a version of the incident in which he left out portions. Objections at ¶ 16-23 at 6-7.  Specifically, Hernandez left out the part where he punched the inmate, because that incident had not been captured on film.  See id. ¶ 22, at 7. Accordingly, it is not clear that Hernandez was misleading only in the one incident for which he

is being sentenced.

Hernandez' offense is serious.  It is important that the criminal justice system be able to rely upon the accuracy of law enforcement's incident reports.  To grant a departure for aberrant behavior to law enforcement when they are caught in making false statements diminishes the seriousness of the offense.

The Court has trouble distinguishing Hernandez' case from many others involving defendants with a Criminal History Category of I.  The Court concludes that this case fits into the heartland of cases that federal courts see.  In any case, the Court chooses not to depart, because it does not believe departure is warranted under the facts and circumstances here.  The Court will therefore exercise its discretion not to depart because the Court remains convinced that Hernandez' case fits within the heartland of cases that federal courts confront.

The specific sentencing Guidelines for misprision of a felony, as set forth in the PSR, provides a reasonable sentence for Hernandez, or at least provides a reasonable basis from which the Court can consider a downward departure for substantial assistance.  Given the assault on the victim, and given, as the Guidelines reflect, the offense that Hernandez concealed was more serious than a minor assault, and more serious than an assault perpetrated by one private citizen on another, the Court will not depart for aberrant behavior.  The Guidelines reflect the Sentencing Commission's conclusion that Congress intended to ensure that law-enforcement officers who act under color of law to commit crimes receive more than a slap on the wrist for doing so.  The Court is reluctant to depart from and disturb that considered judgment.

**IV.  THE COURT WILL GRANT THE UNITED STATES' MOTION FOR DOWNWARD DEPARTURE FOR SUBSTANTIAL ASSISTANCE TO AUTHORITIES PURSUANT TO  § 5K1.1 OF THE SENTENCING GUIDELINES.**

The United States has moved, pursuant to U.S.S.G. § 5K1.1, for a downward departure for

Hernandez based on his substantial assistance in the investigation and trial of the underlying incident.  See Tr. at 11:15-13:12 (Parker).  It is the position of the United States that the Court should depart significantly from the Guidelines in sentencing Hernandez. See id. The Court agrees that the departure should be grounded only on U.S.S.G. § 5K1.1.  Accordingly, there is no other basis on which a departure from the sentencing  Guideline is warranted.

The Court has carefully considered all relevant information in this matter.  The Court finds that, in the interest of justice, it should grant the United States' motion for a downward departure for substantial assistance to authorities pursuant to U.S.S.G. § 5K1.1.  Accordingly, the Court will grant a downward departure of 7 offense levels from an offense level of 15.  The Court notes that at the hearing the United States agreed that a 7-level departure was appropriate.  See Tr. at 14:12-14 (Parker)(stating "is the question whether or not the Government feels that seven levels is too much for a downward departure for substantial assistance?  If so[,] we don't.  I mean this is a case where we feel very comfortable leaving the amount of the departure to the Court's discretion.").  An offense level of 8 and a Criminal History Category of I results in a Guideline imprisonment range of 0 to 6 months.

## V.   THE COURT WILL DENY HERNANDEZ' REQUEST FOR A VARIANCE.

Hernandez' counsel submits that, taking into account the sentencing Guidelines as well as the sentencing goals of 18 U.S.C. § 3553(a), a reasonable sentence is 0 to 6 months.  See Objections at 5.  Hernandez contends that this sentence gives recognition to the Guideline range while also applying an appropriate reduction because of Hernandez' aberrant behavior.  See id.  Hernandez makes a motion for a more reasonable sentence.  See Objections.

The Court does not believe that there is anything about Hernandez' personal circumstances that distinguishes the hardships he would suffer by being sentenced in accordance with the

Guidelines from those suffered by other persons who run afoul of the law.  He has cooperated with authorities to the best of his ability.  After granting the United States' motion for a downward departure for substantial assistance, the Guidelines set forth a reasonable sentence for the conduct at issue.

A sentence less than that which the Guidelines advise is not appropriate.  The Court does not believe that it can craft a more reasonable sentence than that which the Guidelines advise that will still allow for just punishment, sufficiently deter crime, and adequately rehabilitate Hernandez.  A variance is thus not in the interest of justice.

The Court has carefully considered the advisory Guideline sentence, but in arriving at its sentence, has taken account, not only of the Guidelines, but of other sentencing goals.  Specifically, the Court has considered the Guidelines' sentencing range established for the applicable category of offense committed by the applicable category of defendant.  After engaging in that examination, the Court believes that the punishment set forth in the Guidelines is appropriate for this sort of offense.

The Court has considered the kinds of sentences and ranges of incarceration that the Guidelines establish, and the Court believes that, after the 7-level downward departure for substantial assistance, the advisory range is appropriate and reasonable.  The Court has already sentenced co-Defendants Christopher Tagert and Van Tyler Fraembs, who pled guilty to violating 18 U.S.C. § 242, deprivation of rights under color of law, to 8-months incarceration.  For the Court to sentence Hernandez to less than the Guideline range could introduce an unwarranted sentencing disparity among similarly situated defendants.  While Hernandez, who is convicted of misprision of felony, should received less of a sentence than did Tagert and Fraembs, it is unnecessary for the Court to vary from the Guidelines to secure Hernandez a reasonable sentence in comparison to the

co-Defendants.

The Court believes that a sentence of supervised probation for a period of three years reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and otherwise fully reflects each of the factors embodied in 18 U.S.C. § 3553(a). The Court also believes that the sentence is reasonable. The Court believes that the sentence is sufficient, but not greater than necessary, to comply with the purposes of punishment set forth in the Sentencing Reform Act. While the Court will impose a reasonable sentence that does not vary from the Guideline sentence, the Court believes that the sentence will effectively promote the sentencing goals. In light of all the sentencing goals, the Court believes that the advisory sentencing Guideline produces an appropriate sentence. In conclusion, the Court will adhere to the federal Sentencing Guidelines in determining a fair and just sentence for Hernandez.

**IT IS ORDERED** that the objections in the Defendant's Objections to Presentence Report, Memorandum of Law, and Incorporated Motion for a More Reasonable Sentence are overruled. The Defendant's request for a downward departure in the Defendant's Objections to Presentence Report, Memorandum of Law, and Incorporated Motion for a More Reasonable Sentence is denied. The United States' motion for a downward departure for substantial assistance is granted. The Defendant's request for a variance in the Defendant's Objections to Presentence Report, Memorandum of Law, and Incorporated Motion for a More Reasonable Sentence is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Gregory J. Fouratt
  United States Attorney for the
   District of New Mexico
Albuquerque, New Mexico

 -- and --

Kristy L. Parker
  Assistant United States Attorney
  Special Litigation Counsel
Civil Rights Division, Criminal Section
United States Department of Justice
Washington, D.C.

      *Attorneys for the Plaintiff*

Cesar Pierce-Varela
Las Cruces, New Mexico

      *Attorney for the Defendant*